## THE HOUSATONIC RAILROAD COMPANY *vs.* WATERBURY.

Where, in an action on the case, against a railroad corporation, for killing the plaintiff's cow, by carelessly and unskillfully running their locomotive against her, the declaration contained no averment, that this was done on the defendants' railroad track; it was held that such averment was not necessary.

Where, in such action, it appeared, that such railroad divided the plaintiff's farm into two parts, and it did not appear that there was any highway or ordinary passway that enabled him to get from one side of his farm to the other, without crossing said railroad, and the defendants requested the court to instruct the jury, that they had the exclusive right to the use and occupancy of their railroad track, through the lands of the plaintiff, and if they were in the ordinary and proper use of said railway, when said cow was killed, and said cow was trespassing upon said track, the defendants were not liable, unless they were guilty of gross and willful neglect, and that the plaintiff, in permitting his cow to stray or stand upon said track, as claimed

to have been proved by the plaintiff, was a trespass against the defendants; but the court instructed the jury, that the defendants held their easement, subject to the plaintiff's right to cross and recross, to and from the different sections of his farm, separated by said road, provided the same was reasonably exercised; that it was their duty to ascertain, if either party had been guilty of negligence: if the plaintiff saw his cow on the railroad track, about the time when the train ordinarily passed the road, at that place, or if his cattle were turned upon land adjoining said railroad track, and were loitering along near the track, such facts might be evidence of negligence which it was proper for them to consider. It was held, that such instructions were correct.    (Two judges dissenting.)

THIS was an action on the case, brought by Uriel Waterbury, against the Housatonic Railroad Company.

The declaration contained two counts.    In the first, it was alleged, that the plaintiff, on the 20th day of May, 1851, at Cornwall, was lawfully possessed, and was the owner of a certain cow, of the value of thirty-five dollars, and that the defendants, on said day, were in the possession of a certain railroad locomotive, which was under the care, government and direction of a certain servant of the defendants; and that the defendants, by their said servant, so carelessly, negligently and unskillfully managed and directed said locomotive, as to run the same against and upon said cow.    The second count contained the additional averment, that said cow, at the time of the commission of said act, by the defendants, was upon a crossing of the track of the road of the defendants, which crossing was necessary to the plaintiff, in the use and occupation of his land, and over which crossing he was accustomed to drive his cows and other animals.

The cause was tried before the jury, at the term of the county court, holden in Litchfield, in December, 1853.    On the trial, the plaintiff testified, that the defendants' railway divided his farm into two parts ; that, in May, 1851, he and his hired man, one Foster, were at work in the plaintiff's field, adjoining said railroad, when the plaintiff observed, that his cows had broken into his meadow on the east side of said railway; that he directed said Foster to turn said

cows out of the meadow, into the highway running parallel with said railroad, on the east side of the same, and about seven rods distant therefrom, to remain a little time, while the plaintiff and said Foster could finish plowing a narrow strip of land; the plaintiff remarking to said Foster, at the same time, that all the regular trains had gone past; and that said cows were accordingly turned upon said highway. From the place where the cow was killed, on the track of said railway, to said highway was about six rods. There was a strip of land, lying between said railway and said public highway, of about six rods in width, which belonged to him, but which he did not occupy, but the same was occupied by the defendants, as a place of deposit for stones taken from the earth, in the construction of their railway; which ·stones were piled up in the form of a wall. There was a gap in said wall, through which the plaintiff had been accustomed to drive his cattle across said strip of land, and across said railway to his lands on the other side, and he could communicate with his lands on each side of the railroad, only by crossing the railroad track.

About an hour after said cows were turned into the highway, he saw the defendants' engine coming round a curve, and saw his cow on the track of said railway, on the passway over which he had been used to drive his cattle; he heard no sound of the whistle, till the cow-catcher caught the cow, and the train did not stop. He heard no bell rung, and the train did not slacken its speed. In his opinion, the engineer on said locomotive could have seen the cow, where she stood, from thirty rods north of the place where she was killed.

The plaintiff also testified that, from the place where he was, they could have seen the cows all the time, from the place where they were turned into said highway, till said cow came upon said track, but that he did not know how long said cow had been there, before she was killed, and that it was about one hour after said cows were turned on said

highway. The train that killed said cow was an extra freight train, and the regular train of the defendants had passed, before said cows were turned upon said highway, and came down the road, at about the usual time of its passage. When an extra freight train ran up the road, at the time this did, it usually returned south about the time this freight train passed down, on this day.

Said Foster testified substantially to the same facts.

Judson Wells testified, that the engineer of said locomotive could have seen the cow, thirty rods north of the place where she was killed; and that he had once known a train of cars stopped, in going the distance of about fifteen or sixteen rods, but he did not measure the distance.

The plaintiff also offered Henry Beers, as a witness, who swore, that the cow could have been seen by said engineer, about twenty-nine rods north of where she was killed.

To all which evidence the defendants objected, because the plaintiff had not laid the foundation for it, by the averments in his declaration; but the court overruled said objection, and admitted said testimony.

The defendants offered to prove, and claimed they had proved, that all possible care and caution was observed, by the engineer, to avoid running upon said cow, and that she was killed, by the fault of the plaintiff, he having been guilty of negligence, in permitting his cow to stray upon said track, and it was impossible for said engineer to have seen said cow, at a greater distance than six or seven rods above the place where she was killed, and that it was impossible for said engineer to have avoided running upon said cow.

The evidence in said case being closed, the defendants requested the court to instruct the jury, that they had the exclusive right to the use and occupancy of their railway track, through said lands of the plaintiff, and that, if they were in the ordinary and proper use of said railway, run-

ning their cars over it, at the time when said cow was killed, and said cow was trespassing upon said track, the defendants were not liable, unless they were guilty of gross or willful neglect.

Also, that the plaintiff had no right to permit his cow to stand upon said track, in the manner stated by the testimony of the plaintiff, and that, in so doing, the plaintiff was a trespasser against the defendants.

But the court declined to instruct the jury, as requested by the defendants, but did charge the jury as follows : " That, it being proved, that the plaintiff, owning a farm through which a railroad was laid and built, and after the building of said road, and that at the time of the injury, the plaintiff owned the land on each side of said railroad track, the plaintiff had a right of way to pass and repass from one side to the other, by implication of law. That the corporation held their easement, subject to the right of way of the plaintiff, to cross and recross to and from the different sections of his farm, separated by said road, provided the same was reasonably exercised, at the time of the injury. If they were in the improper and unreasonable exercise of such right, at the time of the injury, then this right might be laid out of consideration. That it was the duty of the jury, to ascertain, if any of the parties had been guilty of negligence. If they found that the plaintiff saw his cow on the railroad track, about the time the train ordinarily passed the road at this place, and the plaintiff was not passing over the track from one side to the other, in conformity to his right of way, it might be received, as important evidence of negligence. And if the cow and cattle were turned on to land adjoining the railroad track, and were loitering along near the track, then it was evidence of negligence, which it was competent for them to consider."

The jury returned a verdict in favor of the plaintiff. After verdict and before judgment was rendered thereon, the

defendants filed their motion in arrest of judgment, for the insufficiency of the plaintiff's declaration, which motion was, by the court, overruled, and final judgment rendered on the verdict. The defendants, thereupon, filed their motion in error, and removed the cause to the superior court, where it was reserved for the advice of this court.

*Wheaton* and *J. H. Hubbard*, contended,

1. That the declaration was insufficient, because it did not show, that the plaintiff's cow, at the time of the injury, was rightfully on the railway of the defendants; nor that the plaintiff was driving his cattle along any public highway, which crossed the railroad, nor that he was driving them across the track, at any other point, nor is any fact or circumstance averred, from which it can be presumed that the plaintiff's cow was on the track, without his fault. A declaration must state the right of the plaintiff, the wrong of the defendant, and consequent damage, and everything is to be taken most strongly against the pleader.

2. That the court should have charged the jury, that the defendants had the exclusive right to the use of their railway track through the plaintiff's lands; and that, if they were in the ordinary and proper use of said railway, by running their cars over it, at the time the cow was killed, and said cow was trespassing on the track, the defendants were not liable, unless they were guilty of gross and willful neglect. A railway corporation is a purchaser, entitled to the exclusive right of possession to the ground occupied by their track and paid for, to the proprietors of it. There can be no exceptions to this rule, unless in case of public highways or private ways crossing the track, duly laid, under the statute.

3. That the charge, that the plaintiff had a right of way across the defendants' railroad track, by implication, of law, was erroneous. The common law rule applied to railroad companies, would be the destruction of all railroad improve-

ments. The defendants take their right from the state, and the lands are taken for public use, and the owner of the land reserves no right of way, by implication. In the present case, no facts were proved, which, at common law, would give any right of way, by necessity. There are public highways over which the plaintiff may pass and repass to his lands. *N. Y. & Erie R. R. Co.* v. *Skinner*, Am. Law Rep., vol. 1, 97. *Foot* v. *Wiswal*, 14 Johns. R., 304. *Bush* v. *Brainard*, 1 Cow., 78. *Rust* v. *Low*, 6 Mass. R., 94. *Barnes* v. *Cole*, 21 Wend., 188. *Rathbun* v. *Payne*, 19 Wend., 399. *Tonna R. R.* v. *Munger*, 5 Denio, 255. *Beers* v. *H. R. R. Co.*, 19 Conn. R., 566.

*Hollister* and *Andrews*, for the defendant in error, contended,

1. That the declaration was sufficient; it describes the company, and states that it was in possession of a railroad locomotive, which was so unskillfully and negligently managed, by the servants of the company, that the plaintiff's cow was killed.

2. That the part of the charge to the jury, relating to the right of way, by implication of law, was correct. This is a case between the original owner of land and a private corporation, that has acquired, by authority of law, and not by consent of the other party, a right to pass over said land. The owner must pass over, or he loses the use of the farm thus divided. If he could have made the contract himself, he could have reserved his right in set terms; but the law forbids him to make it. It would be to say, that, in selling an easement, by compulsion of law, he also loses his reasonable right, to pass from one half of his farm to the other. The doctrine of necessity, as existing between grantor and grantee, does not apply to this case; there is no privity, no meeting of the minds of the parties, which is the basis of that doctrine. *Collins* v. *Prentice*, 15 Conn. R., 44. *Beers*

v. *H. R. R. Co.*, 19 Conn. R., 566. If there had been a public highway, running at right angles with the track, the risk of crossing would have been the same, at this point, as at any other point on the plaintiff's farm. The plaintiff never intended to part with his right, nor did the defendants ever pay for it. It was worth as much as the freehold of the farm. The law will give effect to the grant, according to the presumed intent of the parties. 15 Conn. R., 44.

HINMAN, J. We have not been able to discover, that any material fact, essential to the plaintiff's cause of action or right of recovery, has been omitted in the declaration. It states the plaintiff's ownership of his cow, where she was, and her value, with precision; that the defendants were in possession of a certain railroad locomotive, under the care and government of their servant, and that said servant so carelessly and unskillfully managed it, as to run it against said cow, on a day named, and kill her, by means of which she was lost to the plaintiff. We do not see what more need be said, to make the plaintiff's loss, or the cause of it, any clearer. It was said, that it ought to have appeared, that it was done upon the defendants' railroad track. But we see no reason for this. A locomotive may be carelessly managed, in any place, and when an injury is caused by it, it would seem, the managers of it ought to be liable. Besides, the second count does state that the cow, at the time she was killed, was upon a crossing of the track of the road of the defendants, which crossing was necessary to the plaintiff, in the use and occupation of his land, and over which he was accustomed to drive his cows and other animals. We think, therefore, the declaration is well enough, and the motion in arrest must be overruled.

The ruling of the county court, in respect to the plaintiff's right of way across the railroad, is said to be incorrect. The railroad, by passing through the plaintiff's farm, divided it into two parts, and it did not appear, that there was any

The Housatonic Railroad Company *v.* Waterbury.

highway, or other ordinary passway, that enabled him to get from one part to the other, without crossing the railroad. Under these circumstances, the court charged the jury, that the plaintiff had a right to pass from one side of his farm to the other, across the railroad, by implication of law.

We think this charge correct, under the circumstances. Any other rule would deprive parties of the entire use of lands, situated like a portion of the plaintiff's farm. The legislature, in authorizing the defendants to construct their railroad, never intended thus to destroy the right of proprietors to enjoy their lands, especially without providing for compensation for lands thus injured. If the plaintiff had, by deed, conveyed a strip of land, running through his farm, so that he could not get from one portion to the other, without crossing the strip thus conveyed, the law would give him a way, of necessity, and we should be very reluctant to hold, that, by taking the land under their charter, they acquire any greater right to it than an absolute deed would give them. We do not, however, rest the case on this ground. We know, indeed, that expressions can be found, in some modern American cases, that seem to countenance the idea, that railroad corporations acquire a full and complete title to land, taken for their use. But expressions of this sort are not much to be regarded, when made in cases where the question arises, between the railroad corporation and some party who was obviously trespassing upon their rights, without any color or claim of right. No such principle has ever been decided, to our knowledge, in any case, where the question arose between the company and the former owner of the soil; and if it has been, we can only say, that such is not our opinion. The principle conflicts directly with the principle that prevails in the analogous case of land taken for the use of an ordinary highway, and we know of no reason that should give a railroad corporation, a full and complete title to the land taken by them, that would not apply, with the same force, to land taken for an ordinary turnpike road.

If it be said, that the railroad company must have a more exclusive use of the land, than is necessary for a turnpike company, it is so, undoubtedly; and this circumstance may affect the value of the property, to the owner of the soil, but does not touch the question of the title to the soil. As against third persons, courts have treated railroad corporations as the owners of the lands, because, from the nature of their business, it is necessary, that they should be so far in the exclusive possession as to exclude all others, whose joint possession would be inconsistent with the free use of the railroad, in the manner in which it is accustomed to be operated; and this, undoubtedly, is all that is meant, when lands are spoken of, as the property of the railroad corporation. Owners of the soil would have no right to pasture their cattle upon the railroad, because such a right would endanger the public, who travel upon it, and is, therefore, inconsistent with the use to which it is appropriated. But the right to cross a railroad is not inconsistent with such use. Such a right exists in the whole public, wherever an ordinary highway crosses a railroad. It exists in individuals, wherever there is a private passway across one, and we think it also exists, as the county court charged the jury, in this case, that it did, wherever a proprietor's land is so divided that he can not pass from one portion of it to the other, without crossing a railroad. If the plaintiff had a right to pass from one portion of his farm to the other, with his cows, across the railroad, he was not, necessarily, trespassing upon the rights of the company, at the time his cow was killed. That would depend upon whether he was in the reasonable exercise of his right of passing. Now, that question was very fairly submitted to the jury,—certainly in a manner of which the company can not complain.

It may be, that the jury did not find the fact, as we should have done, but that is no ground of error. As a question of fact, merely, there was, undoubtedly, evidence tending to show, that the plaintiff's cow was not in the exercise of the

The Housatonic Railroad Company *v.* Waterbury.

right of passage across the railroad, but was loitering along upon the track, and that the plaintiff was guilty of negligence, in suffering her to do so. But all this was submitted to the jury, and they found a verdict for the plaintiff. This, whatever we may think of it, as a matter of fact, we have nothing to do with, on the question of whether there was any error in the charge. As we have not been able to find this, the judgment must stand.

The court charged the jury, that the plaintiff ʹcould not justify the presence of his cow on the railroad track, by any right to depasture there; and, if the defendants below, had requested it, would undoubtedly have charged them, that he had no right to suffer her to loiter, or stray upon, or to stand upon the track. Indeed, such, in substance, was the charge, when the jury were told, that the plaintiff's right of crossing must be exercised reasonably, and that the right to cross might be laid out of the case, if it was unreasonably exercised, at the time. But, in requesting the court to charge the jury, that the plaintiff had no right to permit his cow to stray, or stand upon the track, in the manner stated by the testimony of the plaintiff, they attempted to withdraw the question of fact from the jury, and to induce the court to draw the inference, from the plaintiff's testimony, which, it appears to us, could only be drawn by a jury. While, therefore, we see ground to suppose, that the jury may have judged incorrectly, we are not satisfied, that they were misled by the court. We do not find any error in the judgment complained of.

In this opinion STORRS and ELLSWORTH, Js., concurred.

CHURCH, C. J., and WAITE, J., dissented from that part of the opinion of the court, relating to the questions arising upon the bill of exceptions, and were of opinion, that the judgment of the county court ought to be reversed, in consequence of their refusal to instruct the jury, in the manner requested by the defendants.

Judgment affirmed.