## No. 8759.

### JOHN A. STEVENSON VS. THE NEW ORLEANS PACIFIC RAILWAY CO.

In this State there are no general statutes compelling railroad companies to fence in their tracks. Hence, in a suit against a railroad corporation for the recovery of the value of stock killed or otherwise destroyed by its trains and employees, the plaintiff must make his case certain, as in other suits for damages; and he must allege and prove that the injury to his property was the result of culpable negligence and carelessness on the part of the corporation or of its employees.

APPEAL from the Twenty-fourth District Court, Parish of St. John the Baptist. *Hahn, J.*

---

*James D. Augustin* for Plaintiff and Appellant:

Railway companies are liable for injuries done to cattle on their track, where the injury could have been prevented by the use of ordinary care (Lacey's Digest of Railway Decisions, par. 24, p. 345) and that, although the animals were wrongfully on the track. Ib. par. 26.

There is a *prima facie* case of negligence made out against the railroad when the animals were pasturing on plaintiff's own land. Danner vs. S. C. R. R. Co., 4 Richardson's Law S. Car., p. 329.

These principles apply to cattle killed at night. 10 Richardson's Law S. Car , p. 227.

R. C. C. Art. 2315: Every act whatever, of man, that causes damage to another, obliges him by whose fault it happens to repair it.

R. C. C. Art. 2316: Every person is responsible for the damage he occasions, not merely by his act, but by his negligence, his imprudence, or his want of skill.

*W. S. Benedict* on the same side.

*Kennard, Howe & Prentiss* for Defendant and Appellee:

1. Plaintiff must make his case certain.
2. The burden of proof is on plaintiff to show the Company's negligence whenever its liability for an injury to stock depends on its negligence, as when then the cattle entered on the track at a place where the Company is not required to fence the track.
3. Proof that the injury was inflicted by the Company is not "*prima facie* evidence of its negligence."
4. The rate of speed not being fixed by law, no rate is of itself evidence of negligence.
5. The negligence complained of must have been the immediate cause of the injury sustained by the plaintiff.

6. Negligence is a failure to do what a reasonable and prudent person would ordinarily have done under the circumstances, or doing what such person, under the existing circumstances, would not have done. 95 U. S. 441, R. R. Co. vs. Jones.

7. The degree of care which the law exacts and the omission of which is neligence or "culpa," is that degree which men of ordinary prudence would exercise in a given situation.

8. The Company is not bound to fence its track in Louisiana. 15 An. 105, Knight vs. Opelousas R. R.; 23 An. 154.

9. Where the circumstances point just as much to negligence on the part of one party as to its absence, or point in neither direction, a recovery cannot be had. 31 An. 490, Murray vs. Pontchartrain R. R. Co.

10. The proof in the instant case by the plaintiff himself is that he was guilty of gross negligence.

11. There is plenary proof that the Company used all possible care and diligence to avoid the accidents.

---

The opinion of the Court was delivered by

POCHÉ, J. Plaintiff sues for the value of six mules alleged to have been killed on his plantation in the Parish of St. John the Baptist by passenger trains of the defendant Company, through the gross negligence and carelessness of its employees.

The uncontested facts of the case are: that the mules were all owned by plaintiff; that one of them was killed in the night of October 20th, and the five others in the evening at dark of November 6th, 1881.

The District Judge allowed to plaintiff $150 for the animal killed in October, and rejected his demand as to the five others as in case of non-suit. He appeals and defendant moves to amend the judgment, so as to defeat his entire demand.

Plaintiff contends that the proof of the destruction of his property by the trains of the Company throws upon the defendant the burden of proving justification or want of negligence.

But he has signally failed to refer us to any authority, either of law or of jurisprudence, in support of his proposition. Although the question is not new, and has been frequently considered by our own Courts, yet in view of the importance of the question, in connection with the increased construction of railroads in this State, we have been at great trouble to examine all the authorities within our reach on the proposition so seriously advocated by plaintiff's counsel.

Our researches have led us to the conclusions previously reached and announced by our predecessors in this Court.

Hence, we recognize the rule that in such suits for damages the plaintiff must make his case certain, and that the burden is upon him to prove that the alleged injury to his property was the result of negligence or carelessness of the defendant or of its employees. And we further hold that in this State there is yet no general statute compelling railroad companies to fence in their tracks. Knight vs. Opelousas

Railroad, 15 An. 105 ; Perkins & Billiu vs. Morgan, 27 An. 229 ; Pierce on Railroads, p. 428; Wharton on Negligence, Sec. 899; Thompson on Negligence, vol. 1, p. 512, Sec. 15 ; Wait's Actions and Defenses, vol. 4, p. 684.

From the record it appears that no one testifies as to the circumstances of the first accident which occurred in October, and that no one except the engineer and the fireman on the train saw the accident of November 6th.

The testimony of the engineer, corroborated by that of the fireman, shows that the train was on time, and was running at its usual rate, eighteen miles an hour; that the day had been very rainy, and that darkness, accompanied by hazy and foggy weather, came unusually early, so much so, that he felt prudent to light his headlight at a station twenty miles west of that where he usually lighted, more than an hour earlier; that the mules were not standing on the track, and hence, he did not and could not see them in advance; that he saw them in the act of crossing the track when the train was only a hundred feet from them ; that he at once reversed his engine and put down the brakes, but that he had been unable to prevent the collision; he further states that he stopped his train and drove off the track some twenty-five mules which had followed those which he had collided with.

This testimony is in part contradicted, but it has impressed us as being true and fully decisive of the case. The plaintiff, who was a passenger on that very train, denies that the train stopped at all on that plantation. But from his own evidence it appears that he was seated in the rear car, engaged in conversation with a friend, and that he did not notice the accident, and knew nothing of it until informed of the same by letter from one of his employees. If he did not perceive the shock which killed five mules, it is very natural that he might have overlooked the fact that the train had come to a full stop at that particular point.

His testimony and that two or three of his laborers, who did not see the collision, but who emphatically swore that the train went by at great speed, and did not stop or slack up, truthful though it may be, is at best negative evidence, and cannot outweigh the affirmative testimony of the two persons who, above all others in or off the train, had the safest and exceptional opportunity of knowing when and where the train did stop  The engineer's testimony on this point is, besides, corroborated by his written report of the accident made to his superior officer the very next day, and at a time not suspicious, when he could not possibly anticipate contradiction as to his statement that he had stopped his train at that point, and that he had lighted his headlight

before reaching the place where the accident occurred, or that his train was on time that evening.

The latter circumstance indicates an element of contributory negligence on the part of one of plaintiff's own employees who had immediate charge of the plantation mules.

The record shows that the railroad track does not lie in plaintiff's pasture or enclosed field; that the mules had for some weeks been allowed to graze in a pea field and in a harvested rice field, and that only two trains passed that point each day, and none in the night; and that the east-going train, to which the accident occurred, was due in the evening between five and six o'clock.   Now, in testifying about the first accident, plaintiff states that his orders were to " put them " (the mules) " in there (the pea field) at night, but always after the train had gone down, so there would be no danger."   For the same reason, as the mules which were injured at the second accident had to cross the railroad track to come and go between the stable lot and the rice field, it was the duty of the stock minder to see that the mules would not cross the track at the time when the train was due.

On that evening the train was on time, and it is evident that the stableman did not perform his duty.

We gather from his own testimony that such was his duty.   He says: " Of course, it was my business to go and see after hearing the report of the cars there, which I did as quick as I could get there.   I was in the quarters when the cars blowed.   At the report of the cars herself I knew my business called me to see after it; but of course I could not walk from the quarters after hearing the tooting and get there at the present moment."   When he reached the spot the accident had occurred. His reasoning is as rational as his negligence is apparent.

Our examination of the evidence has satisfied us not only that plaintiff had utterly failed to prove culpable negligence on the part of defendant, which was the essential condition of his right of recovery, but that defendant has succeeded to show an absolute want or absence of negligence on the part of its engineer.

As stated in the first part of this opinion, the record is barren of any evidence on the circumstances of the first accident, by which one mule was disabled.   Hence, it is apparent that no culpable negligence therefor is proved against the Company, and we, therefore, conclude that there is error in the judgment holding the defendant liable for that animal.

The judgment appealed from is, therefore, reversed, in so far as it condemns the defendant to pay one hundred and fifty dollars for the animal killed in October, 1881, and all costs of suit, and it is ordered that the demand for the value of said animal be rejected as in case of

non-suit, and that plaintiff pay costs in both Courts; and that as thus amended said judgment be affirmed.

Manning, J., dissents, and will file his reasons hereafter.

## DISSENTING OPINION.

MANNING, J. Wait states the doctrine concerning fencing railway tracks to be that, when no statutory regulations exist defining the duties of railway companies in respect to fencing, they come within the common law rule, and are under no obligation to make or maintain fences between their roads and the adjoining lands. 4 Actions and Defences, 684. The authorities he has cited support him, but they are from England, and those of our States that have not changed the common law.

There is excellent reason why the rule should be different in America and in England. By the common law of England every person was obliged to keep his cattle on his own land, and hence, the importance and value there of common of pasturage. The right to graze one's cattle on another's land was and is there constantly asserted and jealously preserved. If cattle roam at large in England without a keeper, the owner is guilty of negligence. This rule prevails in some of our States just as it was derived from England, and is retained without the justifying necessity that England has for it, and which suggested its adoption. And hence, the decisions of the English Courts and of those States upon the liability of railway companies for the destruction of this particular kind of property—cattle—ought not to apply here.

Even on general principles, why should not the omission by a railway company to fence its track be of itself *prima facie* evidence of negligence ? A railway can be operated only by powerful and dangerous machinery, and it is therefore bound to use greater precaution to prevent injury to others. The same author who has laid down so broadly the doctrine above cited immediately qualifies it; but a railroad is bound to use every reasonable care to *prevent cattle from straying* on the line of its road, and if cattle are upon the track, whether lawfully or unlawfully, and are injured or killed through the inexcusable negligence of the company's servants, the company will be held liable, and authorities from nine States are cited. Wait *in loc. cit.* Now, if a railway company is bound to use every reasonable care to prevent cattle from straying upon its track, is not building a fence the most certain method of keeping them off, and a certain method of preventing a thing is reasonable care to prevent it.

Surely it will not be disputed that a railway company is under the same obligation to fence its track or land that rests upon every other proprietor. This has been expressly adjudicated in many States, some

of which like our own have no law compelling a railway to fence, and the omission to fence is held to draw after it the assumption of the risk from straying stock.

Thus the court of Mississippi held, although as a proprietor a railway company is under no greater obligation to fence its land than any other proprietor, yet in the event of an injury, the fact that the road was not fenced must and would exercise an influence in weighing the degree of care to be employed by the company, and when an injury is done, the omission to fence will be considered along with other circumstances in determining the measure of diligence to be used by the company or its agents. Vicksburg R. Co. vs. Patton, 31 Miss. 157.

In the leading case in Ohio the court say : "it is true there is no law in Ohio requiring railroad companies to fence their roads, but when they leave their roads open and unfenced, they take the risk of intrusions from animals running at large, as do other proprietors who leave their lands unenclosed." Kerwhacker vs. Cleveland R. Co., 3 Ohio, 185. And if this be true of animals running at large, with how much greater force does it apply to those pasturing upon the land of their owner ?

Just as the English doctrine had its origin in the necessities of that country, so a rule has been adopted in many of our American States, founded upon the condition of our country and responsive to the needs of its inhabitants. Unenclosed lands in those States are called " the range,". upon which the inhabitants turn their stock to feed at will, and this recognised right has led to enactments defining what is a lawful fence, the object being, not as in England, to keep one's cattle in, but to keep the cattle of others out. We have such a law here. When an owner of stock is sued here by a proprietor of land for damage caused by his stock entering upon the land, and the defence is that the proprietor had not a lawful fence, will it not be good if sustained by proof ?

The conclusion seems to me perfectly logical and inevitable that, as it is not in this State a trespass for cattle to wander upon unenclosed lands, they whose cattle stray upon an unenclosed railroad track are not wrongdoers, and the company is liable for ordinary negligence when it kills them.

If that conclusion be logical and inevitable, it would be singular if there were no adjudications to that effect, but on the contrary the books are full of them. Thus it has been held: ·If stock is injured by a railway company when the injury might have been prevented by ordinary care, the company will be held liable although the owner of the stock was also in some degree negligent. Central R. Co. vs. Davis, 19 Ga. 437.

Where the engineer in charge, by use of ordinary care and skill, could have stopped the train in time to avoid the collision, the company is liable, although the stock was wrongfully upon the track. Toledo, P. & W. R. Co. vs. ———, 57 Ill. 514.

If a railway company has no right of way, the owner of stock is not required to keep them off the track.    They are in his enclosure rightfully, and if they go upon the track they are not there wrongfully, and if injured by the company it is *prima facie* liable.    Matthews vs. St. Paul R. Co., 18 Minn. 439.

The defendant company has the right of way over the plaintiff's land, but its track divides his land in two parts, and in a precisely similar case it was ruled: even if the company was running its trains over the land by the owner's license, yet the road having divided his pasture land into two parts by its track making it necessary for the owner's cattle to cross it, the company would still be liable for cattle killed in crossing the track; for such right to cross is not inconsistent with the right of the company even when compensation has been fully paid.   Waterbury vs. Housatonic R. Co., 23 Conn. 101.

And this being a correct statement of the law it is manifest where the burden of proof lies, for if the cattle are rightfully upon the railroad track at the time of the injury, proof of that fact and of the injury makes a *prima facie* case of negligence, and the burden of proof is on the company to exculpate itself by shewing it was not the fault of its servants but of the plaintiff, or was the result of an unavoidable accident, and it has been so held.   1 Thompson on Negligence, 512, citing cases from five States.   And so it is true, that when the cattle are pasturing upon the land of their owner at the time they are injured, as were the plaintiff's cattle in the present case, that fact of itself makes a *prima facie* case of negligence against the company.   Danner vs. So. Car. R. Co., 4 Rich. 329.

The rules of the defendant company in evidence make the killing of stock negligence on the part of their employees, thus recognising the existence and justice of these legal principles in regulating the relations of those employees to itself, and there is greater reason for holding the company to them in enforcing against it liabilities which it has incurred to others.

I think the inferior Judge erred both ways.   His rejection of the demand for the value of five mules is error because against law, and his approval of the demand for the value of the mule killed in October is error because against the evidence.

Rehearing refused.